# CIRCUIT COURT OF THE CITY OF NORFOLK

In re Petition of
Dow Jones & Co., Inc.

November 17, 2009

No. CL09-3103

BY JUDGE CHARLES E. POSTON

This matter is before the Court upon the Petitioner's Petition for Authority to Publish Legal Notices. Having considered the parties' briefs, the Court finds it lacks subject matter jurisdiction to grant the Petition.

*Factual and Procedural History*

On May 7, 2009, Dow Jones filed a Petition seeking a grant of authority to publish legal notices in Dow Jones' *The Wall Street Journal* ("WSJ") within the City of Norfolk. In this Petition, Dow Jones alleged full satisfaction of Virginia Code § 8.01-324(A), which sets the base qualifications for any newspaper that may be used for legal notices and publications. On June 1, 2009, the Court found that WSJ did satisfy the requirements of § 8.01-324(A) and granted the Petition.

On June 12, 2009, Virginia-Pilot Media Companies, L.L.C., and Landmark Media Enterprises, L.L.C., (together, the "Intervenors") filed a Motion to Intervene and to Set Aside Order in response to the grant of Dow Jones' Petition. The Court granted this Motion on June 22, 2009, vacated its June 1 order without prejudice, and permitted the Intervenors to intervene as Respondents to Dow Jones' Petition.

Petitioner and Respondent each filed a brief, addressing whether the Court has subject matter jurisdiction to grant a newspaper authority to publish legal notice under § 8.01-324(A), whether the Intervenors have standing to intervene, and whether WSJ satisfies the requirements of Virginia Code § 8.01-324(A). For the following reasons, the Court finds that it lacks subject matter jurisdiction to grant authority to publish legal notices under § 8.01-324(A).

## Discussion

### 1. Subject Matter Jurisdiction

The Court lacks subject matter jurisdiction to determine whether a petitioning newspaper meets the requirements of § 8.01-324(A). Such jurisdiction is not granted by the Virginia Constitution or Code and would be redundant and contrary to the intent of the General Assembly.

#### a. No Explicit Constitutional or Statutory Grant of Jurisdiction

Subject matter jurisdiction can be acquired only by virtue of the Constitution or some statute. *Afzall v. Commonwealth*, 273 Va. 226, 230-31 (2007). Neither the Constitution nor any statute grants the Court jurisdiction to decide fitness under § 8.01-324(A). Dow Jones points to § 17.1-513 as providing Virginia circuit courts with a broad subject matter jurisdiction that encompasses determining fitness under § 8.01-324(A). While the scope of § 17.1-513 is broad, its provisions extend only to "cases." The language of the statute makes clear that controversy is implicit to "cases." Because Dow Jones requested the Court find it fit under § 8.01-324(A) through a petition that identifies no controversy, there is no case currently before the Court and thus § 17.1-513 does not grant the Court subject matter jurisdiction.

#### b. Circuit Court Jurisdiction Would Be Redundant and Contrary to the Intent of the General Assembly

Newspapers that meet the requirements of § 8.01-324(A) may be used for legal notices and publications; no court ruling is necessary. The presence, within subpart (B) of § 8.01-324, of a provision allowing circuit courts to grant publishing authority to newspapers that do not possess a second-class mailing permit and the absence of such a provision within subpart (A) makes clear the General Assembly's intent that newspapers meeting the requirements of § 8.01-324(A) may be used to publish legal notices without court review.

Two 1982 opinions by the Office of the Attorney General support the notion that a circuit court's review of a petition for authority to publish legal notices is redundant for newspapers already satisfying the terms of § 8.01-324(A). These opinions explain that it is generally the duty of the *government entity giving notice* to choose a newspaper that meets the requirements of § 8.01-324(A). OAG 269 states, in pertinent part:

> Occasionally, the particular statute requiring publication will specify the identity of the official who shall select the newspaper. In those cases, the designated officials should determine whether the newspaper meets the prescribed qualifications. In the absence of a statute, the law generally provides that the official with whom the law has vested the duty to cause a notice to be published is the proper person to select a newspaper through which the notice is to be published.

1981-1982 Op. Atty Gen. Va. 269. The next year the Attorney General elaborated: "whether or not a newspaper proposed to be used for publication of official notices is one of 'general circulation' is a factual determination to be made by the public official or body that is required to cause the notice to be published." 1982-1983 Op. Atty Gen. Va. 372. It would be redundant for the General Assembly to give circuit courts subject matter jurisdiction to grant a newspaper authority to publish legal notices under § 8.01-324(A), since a determination of fitness already must be performed by the issuing entity.

Va. Code § 8.01-317 is one example of a statute that specifies the identity of the official who shall select the newspaper used for notice by publication. That statute grants a court jurisdiction to determine whether a newspaper satisfies § 8.01-324 when the court, itself, is the entity causing the notice to be published:

> Except in condemnation actions, every order of publication [ . . . ] shall be published once each week for four successive weeks in such newspaper as the court may prescribe, or, if none be so prescribed, as the clerk may direct, and shall be posted at the front door of the courthouse wherein the court is held; [ . . . ] Provided, the court may, in any case where deemed proper, dispense with such publication in a newspaper.

Va. Code Ann. § 8.01-317 (2009). Section 8.01-317 explicitly provides that which Dow Jones reads into § 8.01-324. The General Assembly gave individual courts the jurisdiction to review a newspaper's fitness when those courts, themselves, are the entities issuing notice by publication; it accomplished this through clear, explicit language in § 8.01-317. Because the General Assembly did not include such language in § 8.01-324, it denied circuit courts jurisdiction to make such determinations when that court is not the authority issuing notice. Reading § 8.01-324(A) as granting circuit courts the subject matter jurisdiction to pronounce any newspaper as fit or unfit also creates a realistic potential that two courts may contradict each other concerning a particular newspaper's fitness, a result surely neither desired nor intended by the General Assembly.

    c. *Circuit Court Jurisdiction Would Be Contrary to the General Assembly's Desire for an Objective Standard in Deciding Newspaper Fitness*

The General Assembly designed § 8.01-324(A) to establish fitness without circuit court intervention through that subsection's requirements of a second-class mailing permit and a *bona fide* list of paying subscribers, requirements absent from § 8.01-324(B). In 2007, § 8.01-324(B) was amended to remove "*bona fide* list of paying subscribers" from the requirements for a newspaper to qualify under that subsection. The grant of authority to the circuit courts in (B) applies only when a second-class mailing permit and a "*bona fide* list" are not present.

The General Assembly's choosing a "*bona fide* list of paying subscribers" as a validating criterion under § 8.01-324(A) may have been for the same reason Congress implemented a similar "paid-subscriber" requirement for second-class mailing permits: the objective nature of such criteria abolishes the need to examine media in particularity, keeping such laws in harmony with the first and fifth amendments to the United States Constitution. *Enterprise, Inc. v. United States*, 833 F.2d 1216 (6th Cir. 1987). Section 8.01-324(A) as written circumvents the need for subjective examination of each newspaper candidate.

    d. *The Court Cannot Decide Dow's Petition as a Declaratory Judgment*

The Court cannot issue a declaratory judgment to satisfy the request of Dow Jones' petition. Because the petition presents no justiciable controversy before the Court, granting the petition would constitute a classic advisory

opinion. *Reisen v. Aetna Life & Casualty Co.*, 225 Va. 327, 333 (1983). The Supreme Court of Virginia has found that enactment of the declaratory judgment statutes did not vest the courts with authority to render advisory opinions, decide moot questions, or answer merely speculative inquiries. *Id.* at 331.

This Court's ruling on Dow Jones' petition would be quite literally advisory, for a ruling under § 8.01-324 would not supplant the independent decision-making of a government-entity-giving-notice to choose the newspaper in which to publish that notice. Neither subsection (A) nor (B) of § 8.01-324 is meant to prescribe which newspapers *should* be used for publication; they merely provide which newspapers *could* be used for publication. Any court ruling that merely opines whether a newspaper fits the requirements of § 8.01-324, absent a case or controversy, would constitute an advisory opinion.

## 2. *Due Process*

### a. *Due Process and Notice Generally*

When an individual's rights may be affected by judicial action, due process requires that the individual be given "reasonable notice and reasonable opportunity to be heard and to present his claim or defense, due regard being had to the nature of the proceeding and the character of the rights which may be affected by it." *Eddine v. Eddine*, 12 Va. App. 760, 763-64 (1991) (quoting *Dohany v. Rogers*, 281 U.S. 362, 369 (1930)). Notice must be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Id.* (quoting *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950)). The legislature may prescribe "the kind of notice and the manner in which it shall be given if it is reasonable under all the circumstances and affords the party affected a reasonable opportunity to be heard." *Eddine v. Eddine*, 12 Va. App. 760, 763-64 (1991) (quoting *Williamson v. Hopewell Redevel. & Housing Auth.*, 203 Va. 653, 655, 125 S.E.2d 849, 850-51 (1962)).

### b. *Notice by Publication*

Notice by publication was born in a world where newspapers were the only source of news save for word of mouth. Due process required that notice be given to absent litigants, but direct notice was often impossible due to

unreliable and sluggish methods of locating and contacting individuals. Courts resorted to publication to alert absent litigants because newspapers often provided the best odds of conveying notice due to their relatively broad circulation and general consumption. To further ensure relevant parties were found, notice would be posted simultaneously at the locality's courthouse, the primary governmental site, often in the center of the jurisdiction. The world in which we now live communicates in a vastly different manner; instantaneous, electronic communication dominates across most demographics. Courthouses are unlikely to be at the geographic or social center of their respective jurisdictions and thus receive little "casual" visitation.

The General Assembly sought to ensure that notices by publication satisfy due process by requiring that all newspapers that might carry legal notices either possess a second-class mailing permit and a *bona fide* list of paying subscribers, indicia of circulation and thus the likelihood published notices will be seen by any given individual in the jurisdiction, or pass a judicial review making a similar determination of that particular newspaper's prominence and substance. These requirements, crafted into § 8.01-324, may fail to meet due process demands in some cases because they merely measure newspapers against each other, choosing as fit those newspapers that are most prominent and substantive; but even "prominent" newspapers pale in notoriety and audience when compared to television and internet news sources. Due process demands that notice be sought by a means that suggests an honest desire to actually inform the absentee. *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 315, 70 S. Ct. 652, 94 L. Ed. 865 (1950). A form of notice that is not reasonably certain to inform those affected cannot be constitutionally valid if there exist alternate methods of notice that are more likely to inform and equally feasible. *Id.*

In 1950, the Supreme Court of the United States of America recognized newspapers as generally inadequate to provide legal notice, due not only to insufficient circulation, but also to the lack of correlation between the circulation of a newspaper and the likelihood a legal notice will be read by the intended target:

> Chance alone brings to the attention of even a local resident an advertisement in small type inserted in the back pages of a newspaper, and if he makes his home outside the area of the newspaper's normal circulation the odds that the information will never reach him are large indeed.

*Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 315, 70 S. Ct. 652, 94 L. Ed. 865 (1950).

Publication of notices in newspapers meeting the requirements of § 8.01-324 may not survive a due process scrutiny. Clearly, the *Wall Street Journal* lacks the breadth of circulation in the City of Norfolk enjoyed by the *Virginian-Pilot*, but, depending upon the facts of a case, due process requirements for notice by publication might be met by publishing in either or neither of the two newspapers. Simply put, service by publication is a risky business. It may be an opportune time for the General Assembly to revisit the issue of notice by publication in light of the variety of electronic means of mass communication available.

## Conclusion

The Court finds it lacks subject matter jurisdiction to grant *The Wall Street Journal* authority to publish legal notices under § 8.01-324(A), having found no constitutional or statutory grant of such jurisdiction.

Bereft of jurisdiction, the Court finds it unnecessary to address whether the Intervenors have standing to intervene and whether WSJ satisfies the requirements of Virginia Code § 8.01-324(A).